## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GROVER C. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO 07-0610-KD-C |
| | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on defendant, International Paper Company's, motion for summary judgment (doc. 20) plaintiff's response in opposition (doc. 27) and defendant's reply thereto (doc. 32).  Upon consideration, and for the reasons set out herein, the motion for summary judgment is DENIED.

I.    Background

Grover C. Robinson alleges that he suffered race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. §1981, and age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et seq.   Specifically, Robinson  alleges that he was discriminated against based on his age (60) and his race (African American) when he was not retained as a Predictive Maintenance Technician ("PMT").  International Paper argues, in sum, that Robinson was not qualified for the PMT position and that its decision was based on plaintiff's failure to pass the technical portion of the examination required for the assignment.

II.    <u>Findings of Fact</u> [1]

IP produces paper, packaging and forest products at its Riverdale Mill facility, located in Selma, Alabama.  Approximately 775 workers are employed at the Riverdale Mill facility.  IP has an anti-discrimination policy that is posted at the mill.  Additionally, IP has a 1-800 compliance line for reporting, on a confidential or anonymous basis, alleged EEO violations.

Robinson began working at the Riverdale Mill in July of 1989 and during his eighteen (18) years of employment served in various electrical positions within the facility.  In April 2005, Robinson was working in the position of Maintenance Technician Level IV with the #15 Paper Machine Maintenance crew and was represented by the International Brotherhood of Electrical Workers ("IBEW") under the CBA with International Paper.  The CBA addresses, among other things, the movement of employees as follows:

> In the movement of employees for promotions, demotions, layoffs, filling vacancies, transfers, leaves of absence, and recalls, seniority shall govern, provided the employee has the knowledge, experience, skill and ability to perform the job properly. Should a question arise as to whether or not the senior employee is qualified, if the employee has not already been given a reasonable training period, he/she will be given a trial period.

The CBA provides a dispute resolution mechanism through which represented employees may file a grievance to challenge actions by the company they believe are unfair or undeserved, including complaints of discrimination.  The grievance process culminates in final and binding arbitration.

Within the maintenance department at Riverdale Mill is a group known as Reliability.

---

[1]  When ruling on a motion for summary judgment, the court views "the evidence and all reasonable inferences in the light most favorable to the non-moving party."  <u>Battle v. Board of Regents for Ga.,</u> 468 F.3d 755, 759 (11th Cir .2006).

Employees assigned to the Reliability group have specialized skills and are trained for specific assignments including reliability engineers, vibration technicians, lubrication technicians, electrical/instrument technicians, and electrical/instrument predictive maintenance technicians. Predictive Maintenance Technicians ("PMT") are responsible for the operation, testing and analysis of all motors in the mill, conducting infrared surveys on electrical equipment millwide in order to detect loose connections within a piece of equipment, and inspection and testing of high voltage equipment throughout the mill. The PMT also oversees and supervises contractors who are performing electrical work at the facility. The PMT is required to attend training, become certified and maintain accreditation while assigned as a PMT.

In 2004, as part of an effort to enhance the skill levels and competency of employees working in the Reliability group, management began utilizing panel interviews of candidates for the PMT assignment. The interview panels are comprised of management and hourly employees who must successfully complete a six hour training course on the interview process, which is composed of two parts, a technical interview, which is administered first, and a non-technical interview. The technical interview is conducted by use of the Technical Interview Guide which contains standard questions regarding technical knowledge and experience that is important to the assignment. Interviewers on the panel ask the questions from the Technical Interview Guide and score the candidate from 1 (ineffective) to 5 (highly effective). The non-technical interview addresses prior experience and education, work orientation, customer focus, interpersonal interaction, teamwork, communicating with others, integrity, continuous improvement orientation, self-management, and safety. Candidates must score a minimum of 3.0 on the technical interview in order to proceed to the non-technical interview. The candidate must then

score a minimum 3.0 on the non-technical interview  to be considered eligible for the

assignment.  If more than one candidate posts for the same position and each passes both

interviews, the employee with more service with the company is selected for the position.

In 2005, Robinson was the only bidder for a vacant PMT assignment.  In April 2005

Robinson was placed in the position but was not required to pass either a technical or

nontechnical interview at the time of the placement.[2]  Robinson worked as a PMT for

approximately two months without incident.  On August 8, 2005, Robinson was given the

technical interview for the PMT assignment.  He scored a 2.7 on the technical interview and was

disqualified from moving on to the non-technical interview and from being considered for the

PMT assignment.

Following the technical interview, Cramer Phillips (Robinson's supervisor), Shannon

Chandler, Reliability Manager, and Joe Crosby, Human Resources Generalist, met with

Robinson to discuss the results of his technical interview.  Robinson was advised that he did not

pass the technical interview but was very close to making the minimum required score and was

encouraged to reapply for the assignment.  Robinson was removed from the PMT assignment

and returned to his assignment with the #15 Paper Machine Maintenance crew.

The PMT assignment was reposted.  In September 2005, Bryan Pickering bid on the job

but was disqualified when he failed to complete his technical interview.  In October 2005, Lynn

---

[2]  IP maintains that due to business needs plaintiff was assigned to the PMT position on a
temporary basis to allow him an opportunity to try out the position before IP invested time and
money in training plaintiff and also gave plaintiff the advantage of on-the-job training that would
be valuable to him during the interview process.  Plaintiff disputes in his testimony that the
assignment was temporary, thus for purposes of this summary judgment motion the court finds
that the job assignment was not temporary.

Eiland bid on the job but failed to achieve at least a 3.0 score on the technical interview and was not allowed to proceed to the non-technical interview.  The PMT assignment was reposted in January 2006, at which time Mike Cole and Eric Desch bid on the job.  Eric Desch did not show for the technical interview and was removed from consideration for the assignment.  Mike Cole scored a 3.56 on the technical interview and proceeded to the non-technical interview.  Cole, a 43 year old white male, received a 3.40 on the non-technical interview and was placed in the PMT assignment.

In August, 2006 a second PMT job was posted and was bid on by Tony Buxton, Brice Stultz, and Brian Pickering.  All of the candidates scored above a 3.0 on the technical interview, however,  Brian Pickering was the only candidate to successfully score 3.0 or better on the non-technical interview portion.  Pickering, a white male, was assigned as a PMT.

After being removed from the PMT assignment, Robinson lodged a complaint with IP's toll free Help Line complaining of job discrimination regarding the PMT assignment.[3]  An investigation was conducted and no evidence of discrimination was found.  On November 15, 2005, Robinson sent a letter to Arthur Reid at the Equal Employment Opportunity Commission ("EEOC") in Birmingham, Alabama alleging discrimination on the basis of race and age on the grounds, in sum, that he was required to take "an oral test to keep this job" as a PMT.  An Amended Charge of Discrimination was filed on March 6, 2007.   On May 16, 2007, Robinson's counsel requested a Right to Sue before the EEOC completed its investigation.  Robinson filed the instant lawsuit on August 28, 2007.

---

[3]  IP maintains that Robinson did not utilize the grievance procedure provided in the CBA to challenge the decision.  Plaintiff disputes the grievability of the PTA position.

III.    Summary Judgment Standard

Summary judgment should be granted only if "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.[4] The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-

---

[4]  Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56©.

Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992), cert. denied, 507 U.S. 911, 113 S. Ct. 1259, 122 L. Ed. 2d 657 (1993) (internal citations and quotations omitted).  The mere existence of any factual dispute, however, will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of the Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 534 U.S. 1081, 125 S. Ct. 869, 160 L. Ed.2d 825 (2005).

The Eleventh Circuit has expressly rejected the notion that summary judgment should be seldom used in employment discrimination cases because they involve issues of motivation and intent.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  Id. at 1086 (citation omitted).

IV.    Discussion

Robinson alleges that he was discriminated against on the basis of his race (African-American) in violation of Title VII[5] and Section 1981[6] and on the basis of his age (60), in violation of the ADEA.[7]  IP moves for summary judgment on each of the claims on the grounds,

---

[5]  Title VII prohibits employers from discriminating against any individual with respect to the terms of employment on the basis of race or sex. 42 U.S.C. § 2000e-2(a)(1).

[6]  Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b).

[7]  The ADEA, 29 U.S.C. § 623(a) prohibits an employer from discriminating on the basis of age and provides, in part, as follows:

(a) Employer practices

in sum, that Robinson has failed to meet his burden of establishing a prima facie case of

discrimination and, alternatively, that Robinson has failed to rebut IP's legitimate business

reason for its decisions.  As to the Section 1981 claim, IP maintains that it is barred by the

applicable statute of limitations.

   A.  *Section 1981*[8]

   IP argues that plaintiff's Section 1981 claim is barred by a two-year statute of limitations

applicable to actions arising under the statute.  However, Robinson contends that his claim is

subject to a four year limitations period as provided under the catchall provision in 28 U.S.C. §

1658[9].

---

It shall be unlawful for an employer--

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

[8]  To the extent defendant argues that plaintiff cannot state claim under Section 1981 because there was no contract between plaintiff and defendant for the PMT position, the Court rejects that argument.  Courts in jurisdictions that have addressed the issue have found that at-will employment contracts are considered "contracts" deserving of protection under Section 1981 . See Walker v. Abbott Laboratories, 340 F.3d 471, 478 (7th Cir.2003); Skinner v. Maritz, Inc., 253 F.3d 337, 342 (8th Cir.2001); Lauture v. Int'l Bus. Mach. Corp., 216 F.3d 258, 260 (2d Cir.2000); Perry v. Woodward, 199 F.3d 1126, 1133 (10th Cir.1999); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir.1999); Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir.1998).

[9]  The practice of "borrowing state statute of limitations" was fraught with problems, including conflict of laws issues as well as uncertainty for the parties involved in the litigation.

42 U.S.C. §1981 does not include a statute of limitations.  In 1987 the United States Supreme Court held that federal courts should apply the most appropriate state statute of limitations to claims arising under 42 U.S.C. § 1981.  Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S.Ct.  2617, 96 L. Ed. 2d 572 (1987) (superceded by statute with the enactment of 28 U.S.C. § 1658(a)). In Alabama, the applicable statute of limitations is two years.

Prior to 1991, claims arising under Section 1981 were limited to those alleging discrimination in the formation of new contracts.  Patterson v. McLean Credit Union, 491 U.S. 164, 176-182 (1989).[10]   In 1991, in response to Patterson, Congress enacted an amendment to Section 1981 defining the phrase "to make and enforce contracts" as including the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).[11]  Prior to passing the amendments to Section 1981, Congress passed 28 U.S.C. §1658 which created a "catch-all" statute of limitations that applies a four year limitations period to causes of action that became available after December 1, 1990 (after the passage of 28 U.S.C. § 1658(a)).  Actions which were cognizable *prior* to the

---

See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 378-79,124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).  In an effort to alleviate these problems Congress passed 28 U.S.C. § 1658 which provides, in pertinent part,  as follows:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

[10]  Patterson was superceded by statute with the passage of the Civil Rights Act of 1991.

[11]   In Rivers v. Roadway Express, Inc., 511 U.S. 298, 303, 114 S.Ct. 1510, 128 L. Ed. 2d 274 (1994), the Supreme Court recognized that the 1991 amendment "enlarged the category of conduct that is subject to § 1981 liability,", and held that the amendment does not apply "to a case that arose before it was enacted." Id. at 300.

amendments remain subject to the most analogous state statute of limitations, i.e. two year statute in Alabama.

In order to determine which statute of limitations is applicable, the nature of the claim must be carefully analyzed.  In <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369 (2004), the Supreme Court held that a cause of action  "'aris[es] under an Act of Congress enacted ' after December 1, 1990-and therefore is governed by § 1658's 4-year statute of limitations-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."  <u>Id.</u>  at 382.  Thus, if Robinson's cause of action under Section 1981 would have been actionable *prior to* the Civil Rights Act of 1991 that amended § 1981, the statute of limitations is two years.  However, if the claim was "made possible" by the enactment of 28 U.S.C. § 1658, it would be subject to a four year statute of limitations.

Robinson alleges, in sum, that he "bid on" and "was awarded" the PMT job.  Robinson further alleges that after working in the position for six weeks, "he was informed by supervisor Cramer Phillips that he would have to take an oral test in order to keep his job."  Robinson further alleges that he was advised that he "did not score well on some safety matters [and] his position was taken from him and put out for rebid."  Robinson's claim is, in effect, that he was demoted (or involuntarily removed from) the PMT position based on his race in violation of Section 1981.

In <u>R.R.Donnelly</u>, the Court concluded that plaintiff's wrongful termination and failure to transfer claims were made possible by 1991 amendment to Section 1981, therefore they were subject to four  year statute of limitations.  541 U.S. at 383.  Considering the evidence in a light most favorable to plaintiff, the employment action that Robinson was subjected to is akin to a

wrongful termination.[12]   Accordingly, the Court finds that Robinson's Section 1981 claim

involves the  "termination of contracts, and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship", 42 U.S.C. § 1981(b), and would not have been

cognizable prior to the 1991 amendment to Section 1981.   Thus, the claim is subject to the four

year statute of limitations found in 28 U.S.C. § 1658.  This lawsuit was filed on August 28, 2007,

a little over two years after the alleged discriminatory conduct or action.  Therefore, this claim is

not time barred and defendant's motion for summary judgment is DENIED.

     B.    *Title VII & ADEA*

     Robinson also alleges that he suffered discrimination on the basis of his age and race in

violation of Title VII and the ADEA.  A plaintiff can establish a prima facie case of

discrimination (based on age or race) through either direct or circumstantial evidence.  Damon v.

Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir.1999); *cert. denied,* 529 U.S.

1109 (2000).  "Direct evidence is evidence, that, if believed, proves the existence of a fact

without inference or presumption."  Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th

Cir.2005) (per curiam).  To the extent Robinson argues that there exists direct evidence of age

discrimination, the Court finds the argument unavailing.

     Robinson contends that he "was in a meeting where [Shannon Chandler] said he was

going to get rid of all the dead weight in the PM maintenance department."  (Doc. 28, Exhibit 1-

Deposition of Grover Robinson, p. 151) Plaintiff maintains that he inferred Chandler's comment

---

[12]  Plaintiff characterizes his claim as a failure to retain.  Defendant characterizes the claim as a failure to promote.  The Court notes that if the evidence at trial reflects that defendant is correct in that characterization, then the claim would be barred by the applicable two year statute of limitations.  See Hithon v. Tyson Foods, Inc., 144 Fed.Appx. 795 (11th Cir. 2005) (holding that the applicable statute of limitations period for a failure to promote claim is two years)

to be age based but conceded later in his testimony that the term "dead weight" could apply to both young and old employees.  (Id. at p. 168)

In the Eleventh Circuit, direct evidence of discrimination consists of blatant remarks that are directly linked to an employment decision and "whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Rojas v. Florida Dept. of Business & Professional Regulations Pari-Mutual, 285 F.3d 1339, 1342 n. 2 (11th Cir.2002).  See  Damon, 196 F.3d at 1359 ("An example of direct evidence would be a management memorandum saying, 'Fire Earley-he is too old.' "); Figueira v. School Board of Miami-Dade County, FL, 2007 WL 3286758 (S.D.Fla., October 11, 2007) (slip opinion) (statements that plaintiff should "retire in an elegant manner" and "allow [her] husband to support [her]" not direct evidence of age discrimination); Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393-94 (11th Cir.1997) (evidence that the decision maker told the plaintiff that "he wanted to hire a man for the position [that plaintiff sought] because too many women filled First Federal's officer positions" was not direct evidence that she was terminated because of her sex); see also Templeton v. Bessemer Water Service, 154 Fed.Appx. 759, 762 (11th Cir. 2005)[13] quoting Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir.1988) ("Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence.")

The Court finds the statement regarding getting rid of "dead weight" to be an isolated and ambiguous remark and not the type of direct evidence "whose intent could be nothing other than

---

[13]  Fed. Appx. citations are to unpublished opinions.  Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. Rule 36-2 of the United States Court of Appeal for the Eleventh Circuit.

to discriminate" Rojas, 285 F.3d at 1342; Ash v. Tyson Foods, Inc., 190 Fed. Appx. 924 (11th

Cir. 2006); *cert. denied* __U.S.___, 127 S.Ct. 1154, 166 L. Ed. 2d 995 (2007) (explaining that

stray remarks not uttered in context of challenged personnel actions are not sufficient

circumstantial evidence to provide a reasonable basis for a finding of discrimination in the

context of the employment decisions at issue)**.**  Accordingly, the Court's analysis as to both the

Title VII and ADEA claims proceeds under the familiar McDonnell/Douglas burden shifting

test.[14]

     *McDonnell/Douglas Analysis*

     A plaintiff may establish a prima facie case of discriminatory failure to retain (or

demotion) by showing that: (1) that she was a member of a protected class, (2) that she was

qualified for the job, (3) that she suffered an adverse employment action, and (4) that she was

replaced by someone outside the protected class.  Hinson v. Clinch County, Georgia Bd. of

Educ., 231 F.3d 821, 828 (11ᵗʰ Cir. 2000).  "This formula must not be applied mechanically, but

flexibly, with a view toward the particular ... procedures and factual situation presented."

Phillips v. Joint Legislative Comm. on Performance and Expenditure Review of the State of

Miss., 637 F.2d 1014, 1027 (5th Cir. Feb.1981)[15] (discussing the McDonnell Douglas test in the

---

    [14]  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).   Where
plaintiff offers circumstantial evidence to support a claim of employment discrimination, the
same analysis is used to resolve claims brought under Title VII, and the ADEA.  Turnes v.
AmSouth Bank, NA, 36 F.3d 1057, 1060 (11th Cir.1994);  Pennington v. City of Huntsville, 261
F.3d 1262, 1269 (11th Cir.2001);Howard v. BP Oil Co., 32 F.3d 520, 524 n. 2 (11th Cir.1994)
(explaining that the Title VII burden-shifting framework for analyzing claims of discriminatory
treatment also applies to § 1981 claims); Dowlen v. Secretary Of Veterans Affairs, 2008 WL
2766138 (11ᵗʰ Cir., July 17, 2008) (applying McDonnell Douglas framework to ADEA claim).

    [15]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding
precedent on the Eleventh Circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209
(11th Cir.1981) (en banc).

context of failure to hire).

Proof of a prima facie case raises a presumption of illegal discrimination. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981); <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc).  If plaintiff succeeds in making a prima face case, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the employment decision.  <u>See McDonnell Douglas Corp.</u>, 411 U.S. at 802.  This burden has been described as one of production and not persuasion and is "exceedingly light." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 (11th Cir.1997).  Once the defendant has come forward with the reason for its decision, the burden then shifts back to the plaintiff to rebut the reasoning by showing that is pretextual for a discriminatory motive.  <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 771 (11th Cir.2005) (per curiam) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.")

Pretext can be shown by "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256.  Plaintiff  must meet the proffered reason "head on and rebut it ... [he] cannot succeed by simply quarreling with the wisdom of that reason." <u>Brooks v. County Comm'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1163 (11th Cir.2006) (internal quotation marks omitted). <u>See  St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)(A reason is not "a pretext for

14

discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."); <u>Chapman</u>, 229 F.3d at 1030 (Plaintiff may not merely "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.")

There is no dispute that Robinson belongs to a protected class.  However, IP argues that Robinson cannot make a prima facie case, on either age or race discrimination, because he was not qualified for the PMT position based on his failure to achieve at least a score of 3.0 on the technical interview.  IP further maintains that the "determination of whether an employee is qualified can fluctuate during the employment relationship."  In response, Robinson notes that he bid on the PMT position, was placed in the position, and performed the duties of the position without incident for nearly two months.

The facts, taken in a light most favorable to plaintiff, show that defendant hired Robinson for the PMT position and Robinson performed the duties of the job for nearly two months without incident.  Accordingly, for purposes of this summary judgment, the Court finds that plaintiff meets the first prong, i.e., that he was qualified for the job.[16]

IP next argues that Robinson did not suffer an adverse employment action. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.' " <u>Nettles v. LSG Sky Chefs</u>, 211 Fed. Appx. 837 (11th Cir. 2006) citing

---

[16] This finding is only for purposes of this summary judgment.  Defendant is not precluded from presenting evidence at trial that Robinson was not qualified for the job and thus was not retained in the position.

Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir.2000) (citation omitted).  "Although

an adverse employment action need not be an ultimate employment decision, such as

termination, failure to hire or demotion, it must meet a "threshold level of substantiality ."

Grimsley v. Marshalls of MA, Inc., 2008 WL 2435581 (11th Cir., June 17, 2008) (slip opinion).

"Thus, in order to prove an adverse employment action "an employee must show a serious and

material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake

Park, Fla., 245 F.3d 1232, 1238 (11th Cir .2001).   "[T]he employee's subjective view of the

significance and adversity of the employer's action is not controlling; the employment action

must be materially adverse as viewed by a reasonable person in the circumstances." Id. at 1239.

"[N]ot everything that makes an employee unhappy is an actionable adverse action," otherwise,

"every trivial personnel action that an irritable chip-on-the-shoulder employee did not like would

form the basis of a discrimination suit." Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449

(11th Cir.1998).  A "transfer may sometimes constitute an adverse action."  Id. at 1446.

However,  a "purely lateral transfer ... if not accompanied by any change in position, title, or

salary, and that does not require significant retraining or result in loss of prestige or opportunities

for promotion is not an adverse employment action." Shah v. Clark Atlanta University, Inc.,

1999 WL 1042979,* 8 (N. D. Ga. July 20, 1999)(citing Dekalb County, 145 F.3d at 1449-50,

1453) ("Any adversity must be material; it is not enough that a transfer imposes some de

minimis inconvenience or alteration of responsibilities.")

    Although IP maintains that Robinson suffered no decrease in pay or benefits when he

was removed from the PMT position, there is sufficient evidence that the PMT position was, at

the very least, an avenue for better pay and further advancement for Robinson within the

company.  Moreover, Robinson's argument that he suffered an adverse action as a result of being returned to his original assignment is bolstered by IP's own admission that it spent several thousands of dollars sending the PMT assigned employees to training.  If nothing more, it reflects the value that IP placed on the position and, in turn, the value that plaintiff would have derived had he remained in the PMT position and been given the "thousands of dollars" worth of training.  See Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir.2001)("[E]vidence of "direct economic consequences" is not always required, "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment.") Viewing the evidence in the light most favorable to the plaintiff, the Court finds that Robinson has adequately shown an adverse employment action.

Finally, IP argues that Robinson was not treated less favorably than any other candidate who participated in the interview process for the PMT assignment.  However,  Robinson can also prevail by showing he was replaced by an individual outside his protected class.  The record reflects that after Robinson was removed from the PMT assignment, the company ultimately awarded the position to Mike Cole, a forty-three year old white male.  The Court finds that plaintiff has made a prima facie case of discrimination under both Title VII and the ADEA.

The burden now shifts to defendant to articulate a legitimate non-discriminatory reason for its decision.  As noted herein, this is a burden of production, not of persuasion.  IP argues that Robinson was not retained in the PMT assignment because he failed to achieve the minimal score of 3.0 on the technical interview.  In fact, the evidence reflects that Robinson scored only a 2.7 on the technical interview, rendering him ineligible to continue to the non-technical portion

17

of the process.  Defendant has met its light burden and the focus now shifts back to plaintiff to establish that the proffered reason is pretextual for its discriminatory actions.

Robinson points to the fact - the elephant in the room -- that he bid for the PMT position and was placed in the position by IP.  IP did not require him to go through the established two-pronged interview process at the time he was placed in the assignment.  Rather, IP states that it was merely giving Robinson an opportunity to work in the assignment to determine if he liked the job and to allow him to obtain some on the job training to assist him in the interview.  This fact is disputed by Robinson.[17]

The record reflects that Robinson performed the duties of PMT, apparently without incident, for nearly two months prior to the initiation of the interview process.  IP now argues that Robinson's job performance during those two months has no relevance to the technical interview process and therefore is insufficient evidence of pretext.  The Court disagrees. Because Robinson has raised a genuine issue of material fact as to whether IP's  reasons for not allowing him to remain in the PMT position are pretextual, IP's motion for summary judgment on Robinson's claims arising under the ADEA and Title VII is DENIED.

V.    Conclusion

Based on the foregoing, IP's motion for summary judgment is DENIED.

DONE this the 29th day of August 2008.

---

[17] In response to the deposition query regarding what Robinson was told when he was put in the PMT position, Robinson responded "[t]hat I would be required to attend certain schooling and to meet the requirements to obtain the skill level that they were needed to perform the job." Ironically, both parties cite to this statement by Robinson in support of their argument as to whether the job was temporary.  However, construing the statement in a light most favorable to Robinson, it is not an admission that the job was temporary.  This is especially true in light of Sharon Chandler's affidavit in which she states that while employed the PMT would be required to attend certain training and attain certain skills and certification.

 S/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**